## No. XIII.

### JAMES DENISON, COUNSEL FOR ABSENT HEIRS OF IRA INGRAM, v. SETH INGRAM.

(See Note 50.)

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—Seth Ingram filed his petition in the court of probates for the county of Matagorda in the year 1841, praying to be duly recognized as the sole heir of Ira Ingram, his brother, deceased, and put in possession of his succession with the benefit of an inventory. He alleges that the said Ira Ingram departed this life intestate, or leaving no legal or valid will at the time of his death; that for the purpose of collecting the effects of the estate of the said Ira

---

T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

**Note 39.**—Selkirk v. Betts & Co., p. 471.

The Legislature may regulate the remedy, both as to pre-existing and subsequent rights, as to them may seem proper; and a statute changing or modifying it is not unconstitutional and does not impair obligation of con-

Ingram and of paying the claims against the same, the petitioner administered on the said estate, according to the form, terms, etc., prescribed to him by the judge of the probate court for the said county, etc.    The petition was demurred to by James Denison, attorney for the absent heirs of the said Ira Ingram, deceased, and the same being overruled, a plea was then filed by way of exception, alleging that the said Ira Ingram at his death left a document purporting to be a will; that said document had been presented to the probate court for the county of Matagorda, for probate as a will; that said court upon proof offered admitted the same to probate as a will and declared the same to be the last will and testament of the said Ira Ingram, deceased; that the same is recorded in the records of the said court; that the probate has never been impeached, and that the said Seth Ingram has acted as executor under said will.    The replication to this states substantially that the said Ira Ingram did die intestate, and that the document referred to in defendant's answer was not by the law of the land a will or testament and the same is null and void, and further that the said will has never been admitted to probate or decreed to be executed, according to the law of the land.    The defendant joins issue on the second count of the replication, and excepts to the first as raising a collateral issue.    It was admitted that Seth Ingram was the sole heir of the whole blood of the said Ira Ingram, deceased, but that there was a brother of the half blood, or his heirs, in the United States of America.    The petition was dismissed in the probate court.    On appeal to the district court the decree of the court of probate was reversed, and the cause has been brought to this court for final decision.    From an examination of the pleadings in the above cause, it appears that issue has alone been joined on the question of fact, whether or not the document purporting to be a will of Ira Ingram, deceased, has been admitted to probate and established as his last will and testament, by the court of probate for the county of Matagorda. The question of the validity of the will was not properly raised by the pleadings, and the objection that the issue thereon was collateral was well made by the defendant.    On examining the record for the evidence adduced in relation to the question of probate, or not, of the will, we find that on the 25th of September, 1837, Seth Ingram by petition to the probate court for the county of Matagorda, stated, at the death of his brother, Ira Ingram, that his last will was left in the hands of A. L. Clements, and prayed that the same might be produced for promulgation. In conformity with an order from court for that purpose, the will and codicil thereto were produced on the 26th of September; they were opened and read aloud by the judge.    Evidence was taken to establish

tracts, unless it fails to provide an adequate remedy.    Austin v. White, Dal., 434;  Austin v. Andrews, Dal., 447;  Catlin v. Munger, 1 T., 598;  Gautier v. Franklin, 1 T., 732;  De Cordova v. Galveston, 4 T., 470;  Paschal v. Perez, 7 T., 348;  Grassmeyer v. Beeson, 13 T., 524, 529;  Bender v. Crawford, 33 T., 745, 752;  Moore v. Letchford, 35 T., 185, 214;  Bentinck v. Franklin, 38 T., 458;  Wood v. Welder, 42 T., 396;  Treasurer v. Wygall, 46 T., 447;  McLane v. Paschal, 62 T., 102;  Ward v. Hubbard, 62 T., 559;  Collins v. Warren, 63 T., 311;  Parker v. Buckner, 67 T    20;  Boone v. Chambers, 82 T., 480;  Odum

their execution by the testator, and in the words of the record, "the judge signed at top and bottom of each page of the will, agreeably to law." The will was filed and recorded, and on petition from the said Seth Ingram and Spencer H. Jack, they were appointed dative testamentary executors, or administrators with the will annexed, to carry the said will into execution. They took the necessary oaths and gave the bonds required by law. On a careful consideration of the proceedings before the probate court, we are of opinion that they furnish sufficient evidence of the probate and establishment of the said document as the last will and testament of Ira Ingram, deceased. Under the common law, the granting of letters testamentary is conclusive proof of the probate of a will.

It is true that we find no order directing in express terms the will to be carried into execution. But we can not regard such an entry in so many terms, as absolutely essential to the validity of a judgment establishing a will, as duly proven in the court of probates. Where it appears from the proofs exhibited, as it does in this case, that the probate court received evidence as to the execution of the will, that the same was filed and recorded, that letters testamentary were granted for the purpose of carrying the same into execution, we are compelled to recognize the will as having been allowed and established by the said court. The informalities and irregularities which may appear in the entries of the proceedings of the court will not be sufficient to destroy the effect of such a judgment or rebut the presumption that the same was rendered. The will, then, having been admitted to probate by a court of competent jurisdiction, the next question presented for our consideration is whether this judicial act of the court of probates, being unreversed, operates as a bar or preclusion of the present action. We are of opinion that it does. It is a well established rule of law that the judgment of a court of competent jurisdiction is conclusive of the rights of the parties until the same be reversed or vacated. See Brown v. Gibson and Wife, 1 Nott & McC., 326; Lucas v. Bank of Darien, 2 Stewart, 280; Dufom v. La Frane, 11 M. R., 607. The judgment of the court of probates, being in this instance on a matter embraced within its jurisdiction and the same being unreversed, must preclude any action for the purpose of disposing of the decedent's estate according to the laws which regulate successions, until the revocation or reversal of the said judgment. The question of whether the same can or ought to be reversed, having not been presented by the pleadings, can not properly become the subject of consideration.

Garner, 86 T., 374; B. and L. Assn. v. Newman, 86 T., 380; Standifer v. Wilson, 93 T., 232; League v. State, 93 T., 553; State v. Williams, 10 T. C. A., 346; Insurance Co. v. Shearman, 17 T. C. A., 456; T. M. Ry. Co. v. Telegraph Co., 24 T. C. A., 198; Etter v. M. P. Ry. Co., 2 App. C., sec. 61; Moore v. State, 20 T. App., 280; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Williams v. Bradley (T. C. A.), U. R. C., 1902. Where a statute gives a new remedy, not repugnant nor inconsistent with the old remedy, the latter is not taken away, and parties have their election between the two. Thouvenin v. Rodrigues, 24 T., 468; Etter v. M. P. Ry. Co., 2 App. C., sec. 58; M. P. Ry. Co. v. Parkhurst, 3 App. C., sec. 159.

The conclusions to which we have arrived, on the fact of the rendition of a judgment of a court of competent jurisdiction prohibiting the will, render it unnecessary to express any opinion as to the extent to which the laws of Louisiana were introduced in matter of probate; whether this was a will or not agreeably to the laws of the land, or whether the appellee has by his own acts compromitted his rights to the succession or claimed by him in this suit. These questions are not presented in the pleadings, nor can they arise as long as the judgment of the probate court remains in full vigor unrevoked. Having inspected the record, because it seems to the court here that there was error in the judgment of the court below, it is ordered, adjudged and decreed that the same be reversed; that the petition be dismissed, and that the appellee pay the costs of this suit.

*Reversed and dismissed.*

## No. XIV.

### ELIZABETH P. TROTT, ADMINISTRATRIX, ETC., V. DAVID PATTON.

(See Note 51.)

*Appeal from Harris.*

BAYLOR, JUSTICE.—Patton sued Elizabeth P. Trott, administratrix, etc., of Henry Trott, deceased, in the court below, for the recovery of sum of $450 due on a joint and several obligation given by Henry Trott in his lifetime, with one Brasfield, to the said Patton. In the petition it is averred that the writing obligatory was executed in the State of Tennessee, one of the United States of America, and that the rate of interest in Tennessee was 6 per cent per annum. The parties below waived the right of trial by jury, and submitted the case to the decision of the district judge. The matters and things being considered by him, he gave judgment in favor of Patton for the debt, with interest at the rate of 8 per cent per annum—there being no proof in the record showing what the rate of interest is allowed by law in the State of Tennessee. The plaintiffs in error, among other objections, seek to reverse the judgment of the court below on the ground that the contract being a foreign one, and 6 per cent alleged in the petition as the rate of interest, it was improper to allow the 8 per cent per annum in the rendition of the judgment. This assignment of error must be sustained. We have already at the present term of this court decided that interest is to be paid on contracts according to the law of the place where they are to be performed, in all cases where interest is expressly or impliedly to be paid. We see no good reason to depart from

Note 40.—Stockton v. Montgomery, p. 473.

A law will not be declared unconstitutional unless it is clearly so. Southerland v. De Leon, 1 T., 250; Orr v. Rhine, 45 T., 345; G. B. & C. N. G. Ry. Co. v. Gross, 47 T., 428; Baker v. Torrey, 69 T., 7; Lytle v. Halff, 75 T., 128; State v. McAlister, 88 T., 284; Whitener v. Belknap, 89 T., 273; Railroad Commission v. H. & T. C. Ry. Co., 90 T., 340; Harris County v. Stewart, 91 T.,

this rule of law.  The judgment of the court below must therefore be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XV. ·

## JOSEPH KENT, ADMINISTRATOR, ETC., v. ALFRED KELSO, SHERIFF, ETC.

*Appeal from Gonzales.*

BAYLOR, JUSTICE.—Joseph Kent, administrator of the estate of Andrew Kent, deceased, filed his petition in the court below, alleging that by virtue of a decree of the probate court for Gonzales County he offered for sale, on the 6th day of October, A. D. 1840, on a credit of six months, a certain parcel of land belonging to the estate of the said Andrew Kent, deceased, containing 800 acres, being a part of the headright league of the said Kent, deceased, situated in the county of Gonzales.  At which sale one Miles Dick became the purchaser thereof, and gave his bond with James B. Patrick as his security for the purchase money.  That upon default of payment of the amount secured by said bond, the said administrator was entitled by virtue of the statute in such cases made and provided, as well as by the tenor, effect and condition of said bond, to sue out an execution from the probate court for Gonzales County, and by virtue of said execution to sell the property of the said Dicks, or that of his security, for cash to the highest bidder without appraisement.  But thereafter, in August, A. D. 1840, upon default of the payment of the sum of money secured by the bond, the said administrator obtained from the probate court for Gonzales County an execution, directed to the sheriff of said county, commanding him that of the goods and chattels, lands and tenements, of the said Dicks, and his security Patrick, he levy and sell sufficient thereof to satisfy the amount of said bond, together with the interest and costs thereon.  The said administrator further alleges that Alfred Kelso, the sheriff of said county refused to sell the prperty of the defendants, Dicks and Patrick, without appraisement, and prayed the court below for a mandamus to compel him to do so, or show cause why he had failed to make the money on said execution; that the sheriff be cited to appear, etc.  At the next term of the district court for Gonzales County, the sheriff came into open court and acknowledged service of the process.  Whereupon the court rendered the following judgment and decree:  "Came the parties, by their attorneys, and the defendant having, by indorsement on the petition,

133; Mitchell County v. City Nat. Bank, 91 T., 361; Flannagan v. Nasworthy, 1 T. C. A., 470; Languille v. State, 4 T. App., 312; Ex parte Wilbarger (T. Cr.), U. R. C., 1900; Fletcher v. Peck, 6 Cranch, 87; Parsons v. Bedford, 3 Pet., 433; United States v. Coombs, 12 Pet., 72; Grenada County v. Brogden, 112 U. S., 261; Powell v. Pennsylvania, 127 U. S., 678.  The preamble will not be looked to for the purpose of rendering the statute unconstitutional, as it is no part of it.  Sutherland v. De Leon, 1 T., 250.  United States v. Fisher, 2

admitted the grant, issuance and service of the alternative mandamus prayed for and now in court, declaring his inability to know his duty in regard to the sale mentioned in the petition, without the instruction of the court, and submitting in all things to the order and decree of the court in the premises, it is therefore ordered and decreed by the court, that he make sale of the property, by the petitioner in the case mentioned in the petition, for cash, to the highest bidder, without appraisement," etc. From which judgment and decree the said Miles Dicks, one of the defendants in the execution, prayed an appeal, and seeks to reverse it here on various grounds—the first of which we deem it necessary only to notice, as that will in our judgment be decisive of the case. It is objected by Dicks that the execution mentioned in the petition for a mandamus improperly issued from the probate court, that court having no jurisdiction over the subject matter; but that the district court is the proper tribunal to resort to for judgment and execution, and to that court only, which has exclusive original jurisdiction in the premises. We think the objection well taken, there being no law conferring jurisdiction on the probate court in such cases. It is well settled that consent of parties can not give jurisdiction. The execution in this instance was a mere nullity, having emanated from a court which had no jurisdiction over the subject matter. It must therefore be quashed, the judgment and decree of the court below annulled, set aside and reversed.

*Reversed.*

### No. XVI.

### Board of Land Commissioners v. Jesse Walling, Assignee.

#### (See Note 52.)

*Appeal from Nacogdoches.*

HEMPHILL, Justice.—Jesse Walling, in his petition, states that Joshua Seeting, then residing in the county of Nacogdoches, did on the day of the date of the declaration of independence sell and transfer to him the claim of the said Seeting to a league and labor of land, to which he was entitled as a resident citizen of Texas and head of a family; that having made application to the board of land commissioners, they refused to issue either to him as assignee, or to the said Seeting, a certificate for a league and labor of land. On the trial before the district court, the said Walling introduced in evidence the instrument purporting to transfer the headright of Seeting to himself, the district attorney excepting to its introduction. It was also proved that Seeting was a citizen of Texas at the date of the declaration of independence; that he was a married man,

---

Cranch, 358; Postmaster-General v. Early, 12 Wheat., 136; Hadden v. Collector, 5 Wall., 107; Y. & M. V. R. Co. v. Thomas, 132 U. S., 174.

**Note 41.**—Forbes, Brooks & Co. v. Hill, p. 486.

　　Defendant in execution has the right to point out property to be levied on. Scott v. Allen, 1 T., 508; Cloud v. Smith, 1 T., 611; Bryan v. Bridge, 6 T., 137; Wilson v. Smith, 50 T., 365; Atchison v. Hutchison, 51 T., 223; Railway

a head of family, and served in the army in 1835; but it was not proven that Seeting was here at the time of the application for the certificate to the board of land commissioners, nor was he here at the passage of the land law in 1837. The jury returned a verdict in favor of Walling, and from the judgment of the court thereon an appeal has been taken on behalf of the Republic to this tribunal. There are some questions arising from or intimately connected with the consideration of this cause of a magnitude and importance sufficient to exercise the deepest interest and to demand the most patient investigation, but as the urgent and unfavorable circumstances under which we are pressed to the hasty preparation of our opinion will not permit more than an imperfect examination of such point or points alone as are decisive of the controversy, our attention will in this case be directed to the single but controlling question of whether under the laws the appellee could sustain his claim to land as set forth in his petition, without proving, as required by the twelfth section of the land law of 1837, that his assignor was actually a resident of the Republic at the period of the application for the grant. By the provisions of the Constitution, lands are granted to all persons living in Texas at the period of its adoption, viz: to heads of families, one league and one labor of land; and to single men, one-third of a league. But although their claims have thus been sanctioned by the paramount authority of the Constitution, yet no mode was prescribed in that instrument by which an individual could obtain a separate portion of the public domain in satisfaction of his claim, or by which a title for the same might be secured or perfected. No surveys were authorized or titles ordered to be granted for that purpose, but on the contrary it was expressly declared that no survey or title, which might be made after the adoption of the Constitution, should be valid, unless such survey or title was authorized by the Convention, or some future Congress of the Republic. As no process then was provided by the Constitution by which such claimant might receive his share of the public lands, was it competent for those claimants or any of them to institute proceedings before the judicial tribunals of the country against the government, for the purpose of procuring a title or grant to a separate share of the public domain, without the previous sanction of legislative authority for the prosecution of such an action? That it is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent, has grown into a maxim sanctioned as well by the laws of nations as the general sense and practice of mankind. Such an exemption is enjoyed by all independent sovereignties, and nowhere within the scope of our investi-

---

v. Wright, 88 T., 346; Jackson v. Browning, 1 App. C., sec. 606. Provision of statute requiring officer to request defendant to point out property is directory, and failure to do so does not render sale void, in the absence of fraud. Pierson v. Flanagan, 52 T., 266; Odle v. Frost, 59 T., 684; Allen v. Pierson, 60 T., 604; Stone v. Day, 69 T., 13; Beck v. Avondino, 82 T., 314; Alexander v. Benner, 10 T. C. A., 111; Fatheree v. Williams, 13 T. C. A., 430; Ellis v. Harrison, 24 T. C. A., 20; Barbee v. Heflin, 1 App. C., sec. 744; McKennon v. McGown (T. Sup.), U. R. C., 1889. Only entitled to reasonable opportunity to point out, and officer is not required before making levy to

gation has the institution of judicial proceedings to recover claims from a State or nation been regarded as a matter of natural, legal or constitutional right. Governments are instituted to promote the happiness of the whole community, but their beneficent powers would be paralyzed and their ends defeated were they subjected to the embarrassments, arising from the perpetual suits which, were they matters of right, could be prosecuted by every individual for the redress of real or supposed grievances. The experience of ages and the wisdom of the most enlightened statesmen and judicial expositors have sanctioned the doctrine, that less injury would arise from the delay or even the denial of justice to individuals than from the distraction and imbecility consequent upon the government's being involved in continual and harassing controversies, at the will or caprice of every citizen in the community. We intend not, however, to consider or combat the objections which have been urged against this great conservative principle. It has long been established even in governments most favorable to human liberty, and can not be questioned or controverted That wise governments will always do justice to its individual citizens is to be presumed, but should it be refused or delayed, and if for reasons essential to the safety or welfare of the State, or if even from the mere exercise of despotic authority, the government would not consent that claims against itself should be adjudicated in courts of justice, it would be impossible to obtain relief through the instrumentality of judicial proceedings. The wrong might be of a grievous nature, but the powers of judicial tribunals, however great they may be, are not of a character so transcendent as to enable them to afford the remedy. Vide 3 Story on Const., p. 535; Federalist, No. 80; Chisholm v. Georgia, 2 Dall., 419; 2 Pet., 635, 674; 1 Black. Com., 241, 243; 1 Term Rep., 172.

As the appellee then could not sue the government without its consent expressed in a legislative act, let us inquire whether there is any such provision of law as would authorize him to appear before any tribunal and obtain any such warrant or order as would secure a survey and title for the amount of land embraced in his claim. By the eleventh section of an act to reduce into one act and amend the several acts relating to the establishment of a general land office, passed December 14, 1837, boards of land commissioners were established in the several counties for the investigation of headright claims to land, and upon the production of the proof prescribed by the law they were authorized and required to grant

---

seek defendant out of the county. Cook v. De la Garza, 13 T., 431; Sydnor v. Roberts, 13 T., 598; Kendricks v. Rice, 16 T., 254; Choate v. Redding, 18 T., 579; Atchison v. Hutchison, 51 T., 223, 233; Kingsland v. Harrell, 1 App. C., sec. 739. May be pointed out by agent of defendant. Cornelius v. Burford, 28 T., 202. By plaintiff or his agent when defendant fails to point out. Bryan v. Bridge, 6 T., 137; Kendrick v. Rice, 16 T., 254; Batte v. Chandler, 53 T., 613. By surety when his principal fails to do so. Martin v. Rice, 16 T., 157. Officer is not required to find personal property to levy on. Smith v. Frederick, 32 T., 256; Pierson v. Flanagan, 52 T., 266; Anderson v. Oldham, 82 T., 22; Ellis v. Harrison, 24 T. C. A., 20. Officer is not bound to levy on property pointed out by defendant when it does not belong to him or when it is exempt property. Ross v. Lister, 14 T., 469; Carey v. Tinsley, 22 T., 383;

certificates to the claimants. The twelfth section provides for the number of witnesses, as well as the facts, which must be established before the issuing of a certificate; the purchaser of a headright being required to prove that the person represented as entitled to the same was actually a resident in the Republic at the time the application for the grant was made. The question arises, then, whether the appellee, as purchaser of Seeting's headright, could obtain a certificate on any other proof than such as was required by the law. This authority to sue the Republic for his claim was derived from this law, and without this or some other legislative act it could not have been investigated by any tribunal, whether of limited or general jurisdiction. Can he then invoke the aid of this law for the purpose of perfecting his title, with complying with the conditions which qualify the tender of its assistance? As it was through the agency of Congress alone that land claims could be established into grants, it was surely competent for that body to prescribe the conditions and proofs essential to the recognition of these claims, and its power for that purpose is assuredly not to be questioned, when its exercise does not conflict with any of the provisions of the Constitution. We can not perceive that this fundamental law is violated by the requisition of the statute, that where claims, similar to the one in dispute, are set up against the government, the purchaser should be required to prove that his vendor was a resident of the Republic at the period of the application for the grant. We will not now enter upon a review of the various provisions of the Constitution to sustain this position, nor do we intend to decide any questions relative to sales of lands, or the requisites which may be supposed essential to their validity. Under the law of 1837, purchasers of headrights are entitled to certificates therefor, on making the necessary proof. This law only provides for such claims as are recognized under the same. It does not' invalidate, in express terms, any claims to lands of any description, if we except the prohibition of suit by alien empresarios, though there may be various classes thereof, for the establishment of which no provision has been made. Should there be such claims in existence, they must, without further legislative action, continue to lie, as they do now, in a dormant condition. Legislative energy can alone quicken them into life, and sustain them to maturity; they can neither be surveyed nor perfected into a grant, and if they were, neither the surveys nor title could possess validity, the same having been made without the sanction of the Convention, or of a Congress of the Republic. It is hereby ordered, adjudged and decreed, that the judgment of the district court be and the same is hereby reversed.

*Reversed.*

---

Garvin v. Hall, 83 T., 295. Validity of sale is not affected by return failing to show that defendant was called on to point out property, or who pointed it out, or that notice of sale was posted as required by law. Howard v. North, 5 T., 290; Sydnor v. Roberts, 13 T., 598; Crabtree v. Whiteselle, 65 T., 111.

## No. XVII.

### JOHN GREGG v. JOHN YORK.

(See Note 53.)

*Appeal from Milam.*

OCHILTREE, JUSTICE.—In this case York sued out an original attachment against the estate of Gregg, returnable to the spring term of the District Court of Milam County, for the sum of $3400. At the fall term, 1840, of said court, a judgment was rendered against the defendant, from which said judgment a writ of error was taken to this court. It is not essential to a proper disposition of this cause that we should pronounce in detail upon the various errors assigned, but will confine our opinion to that assignment which sets forth that there is a material variance between the grounds of attachment sworn to in the affidavit of York and those recited in the writ of attachment as having been sworn to by him. The ground set forth in the affidavit is, that the said John Gregg resides beyond the jurisdiction of the courts of the Republic, so that the ordinary process of law can not be served on him; and further, that the said John Gregg is so making way with his property, that the said plaintiff will be likely to lose his debt. The writ describes the affidavit as follows: "Oath also having been made that the said John Gregg absconds or secretes himself, or resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served against him, or is about to remove his property beyond the jurisdiction of the court," etc. Ala. Rep., 14. The writ of attachment is a summary remedy created by statute; the statute should be followed in all respects, and all the incidents pertaining to the remedy must be strictly complied with. See McCord, 312. Inasmuch as there is a material departure from the affidavit in the writ, the latter should have been quashed below, when the motion was there made. The writ is also double and uncertain as to the ground on which the plaintiff intended to found his attachment, and is not of such a definite and certain character as would enable the defendant to know what he had to answer, so that he might plead thereto a direct and unequivocal plea. 1 Chitty, 285. We are therefore of opinion that the court below erred in refusing to quash the attachment, and that the judgment below be reversed and annulled.

*Reversed.*

Note 42.—Tinnen v. Matthews, p. 491.

[1] Entire day should intervene between judgment by default nisi and the final judgment. O'Connor v. Towns, 1 T., 107; Wheat v. Davidson, 2 T., 196. Facts alleged in the petition are taken to be true and proven when judgment is by default. Long v. Wortham, 4 T., 381; Willard v. Conduit, 10 T., 213; Crain v. Griffis, 14 T., 358; Guest v. Rhine, 16 T., 549; Watson v. Newsham, 17 T., 437; Prince v. Thompson, 21 T., 480; Ricks v. Pinson, 21 T., 507; Morrison v. Van Bibber, 25 T. Supp., 153; Farr v. Wright, 27 T., 96; Niblett v. Shelton, 28 T., 548; Boles v. Linthicum, 48 T., 220; Evans v. Daniel, 25 T. C. A., 362; Mason v. Slevin, 1 App. C., sec. 11; Hawkins v. Haney, 1 App. C., sec. 723; Johnson v. Dowling, 1 App. C., sec. 1090; Whitaker v. Wallis, Landis

## No. XVIII.

### WILLIAM PATTERSON v. BRYAN AND KARNES.

*Appeal from Bexar.*

OCHILTREE, JUSTICE.—Patterson sued Bryan and Karnes in an action of debt on a protested draft. The defendants came into court and in general terms denied any indebtedness. Under this plea or answer, the defendants offered to prove by the books of the late firm of Bryan & Karnes that the plaintiff was indebted to the defendants in a sum exceeding the amount of the instrument sued on by the plaintiff, which testimony was rejected by the court as inadmissible under the plea of the defendants, on the ground that there was no plea or answer of the defendants stating such defense with a bill of particulars, and that so the evidence would operate surprise to the adverse party; to which opinion of the court the defendants' counsel excepted, and appealed to this court. The defendants' plea was filed on the 12th March, 1841, nearly twelve months after the passage of the statute allowing discounts and set-off, which is so entirely plain and positive in its terms that we can give no stronger reason for affirming the judgment of the court below, than by referring to the second section of the said act—page 62, Laws of 1840. We are therefore unanimously of the opinion that the judgment of the court below be affirmed, with 10 per cent damages thereon for delay, etc.

*Affirmed.*

## No. XIX.

### GEORGE HUFF, ADMINISTRATOR, ETC., v. JAMES K. McCREARY, CLERK, ETC.

#### (See Note 54.)

*Appeal from Austin.*

OCHILTREE, JUSTICE.—In this case, which was brought up by appeal from the county of Austin, it appears that the plaintiff instituted an action of debt against W. P. Huff and Thomas Barrett, by filing his petition in the office of the defendant, who was the clerk of the District Court of Austin County; that the defendant failed and refused to issue the citation prayed for in the petition as required by law, unless the plaintiff should first pay the cost thereof. At the fall term, 1841, of the district court, the plaintiff filed his motion for a rule against the defendant to show cause why he had not issued the writ of citation prayed for. The clerk answered to the rule, that the papers were duly prepared by him and tendered to the plaintiff upon the payment of costs, or on the plaintiff entering into security therefor. The rule was

discharged by the court below. By reference to the act of Congress establishing the jurisdiction and powers of the district court, volume 1, section 17, page 203, it will be seen that when any original process shall issue out of any court in this Republic, the plaintiff at the *return* of such process, or any time thereafter before final judgment, shall upon the motion of any person interested be ruled to give sufficient security for all costs, etc. The terms of the act gave the clerk no discretion. It was his imperative duty to have issued the citation and on the *return* of the process, or at any time thereafter, he might have made his motion for security for costs.

The rule should have been granted. It is therefore the unanimous opinion of the court that the judgment of the court below be reversed and the case remanded.

*Reversed and remanded.*

## No. XX.

### HUFF, ADMINISTRATOR, ETC., V. FOLGER, LAMB & CO

**(See Note 55.)**

*Appeal from Austin.*

BAYLOR, JUDGE.—Folger, Lamb & Co. sued Huff as the administrator of Samuel Sawyer, deceased, for the recovery of $1659.69, due by promissory note averred to have been lost during the revolution. They obtained a special verdict in their favor for the sum of $2499.35, being the amount of principal and interest for ten years at 5 per cent. The jury also found that the debt was contracted at New York, in the United States of America, and from the time of Huff's last acknowledgment of the debt to the time of commencing suit, a little longer than three years. On this verdict judgment was rendered for the plaintiffs, which is sought to be reversed here on the ground that the verdict and judgment is for interest at 5 per cent when no interest should have been allowed, or if any it should have been the interest of the State of New York, one of the States of the United States of America. Upon an examination of the facts of the case as certified to by the judge below, we find no proof therein contained showing what rate of interest is allowed by law in the State of New York, and as interest was computed by the jury at 5 per cent per annum for ten years, the supposed interest of this country, we think this was manifestly wrong. Where a contract is made in another country and with reference to that country, it must be governed by the laws of the place where it is to have its

& Co., 2 App. C., sec. 560; Welch v. Holmes, 2 U. C., 342. To warrant, facts must be stated with sufficient certainty to inform the court what judgment to enter without looking to evidence not within allegations. Judgment is void, if no cause of action is alleged in petition. Hall v. Jones, 3 T., 305; Johnson v. Davis, 7 T., 173; Pressly v. Testard, 29 T., 199; Townsend v. Ratcliff, 50 T., 148; Kimmarle & Hirsch v. H. & T. C Ry. Co., 76 T., 686; Hawkins v.

effect, and foreign laws must be proved as facts. The district court could not therefore judicially know, unless from the finding of a jury on evidence submitted to them (which the record shows was not the case in this instance), what rate of interest is allowed in the State of New York; under such circumstances neither the court nor the jury were authorized to give the supposed rate of interest of this country. See Story's Conflict of Laws, pp. 241, 291, and the authorities there cited. It is therefore the unanimous opinion of the court that the verdict be set aside, the judgment reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XXI.

### REBECCA CUMMINGS, ADMINISTRATRIX, V. ANTHONY BUTLER.

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought into this court by a writ of error from Austin County. The plaintiff in error assigns among various other grounds, "that after judgment by default, and a writ of inquiry being ordered upon an unliquidated demand, the judgment was made final by the court without the intervention of a jury." The record shows that the defendant having failed to appear and answer, on motion of plaintiff's attorney judgment by default was rendered by the court, Friday, the 27th of April. This case was submitted to the court, whereupon judgment was rendered by the court against the defendant for the amount of $400, with interest from the 7th of April, 1839, till paid. The statute prescribes (volume 4, page 89) that in suits upon unliquidated demands the intervention of a jury must be had to ascertain the amount of indebtedness, before the judgment by default can be made final. Upon this ground the judgment of the district court must be reversed and remanded. It is therefore unnecessary to discuss the other causes of error which have been assigned.

*Reversed and remanded.*

## No. XXII.

### REBECCA CUMMINGS, ADMINISTRATRIX, V. OLIVER JONES.

(See Note 56.)

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought by appeal from the District Court of Austin County. It was an action brought in that court by

Haney, 1 App. C., sec. 723; Stringfellow v. Thomson, 1 App. C., sec. 1111; Seastrunk v. Pioneer S. & L. Co. (T. C. A.), U. R. C., 1896. It can not be rendered on a contract different from that alleged in petition. Trabue v.

Oliver Jones against Rebecca Cummings, administratrix of John Cummings, to recover damages on a breach of covenant by the intestate in his lifetime. There was a verdict for the plaintiff, a new trial was asked for and refused by the court, and the defendant appealed. The record contains a statement of facts, certified by the judge below, containing many material facts as to the contract and breach thereof on the part of the intestate, and damages sustained by the plaintiff. But it does not show that the plaintiff proved a demand of the administratrix and her refusal to allow the claim as a debt against the estate. The counsel for the appellee insist that this court ought to presume that a demand was proven, inasmuch as the defendant's counsel below raised no objections to the want of such evidence, nor asked any charge of the judge in relation to it. This position would, we think, be correct, if the record itself did not contain a certificate of the judge that the statement of facts sent up contains all the evidence introduced on the trial below. We are bound to take the record as true. The question then presented to us is: did the plaintiff make out his case in the district court? The statute (volume 4, page 116) directs, that no bearer of a claim against a succession shall commence an action against such succession before presenting such claim to the administrator, etc., for allowance. That if the claim be not allowed by the administrator, the owner thereof, *for the purpose of establishing the same,* may bring his action, etc.

The petition must contain an allegation of such demand and refusal, and it is equally necessary to prove it. This proof in the case before us was not made in the trial below.

The verdict of the jury was not sustained by the evidence and a new trial ought to have been granted.

Let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXIII.

### CAVENAH v. SOMERVILL.

*Appeal from Matagorda County.*

OCHILTREE, JUSTICE.—We learn from the record sent up in this cause that at the fall term, 1840, of the District Court of Matagorda County, Alexander Somervill, the defendant in this action, recovered a judgment against Charles Cavenah, the plaintiff, and one Randal Jones, for the sum of $1000, with interest and costs, upon a note executed by said Cavenah and Jones to one Secrest, and by Secrest indorsed to Somervill. After the issuance of execution on said judgment, Cave-

---

Stoneum, 20 T., 453; Graves v. Farquhar, 20 T., 455; Johnson v. Stallcup, 41 T., 529. Nor when petition discloses a void or illegal contract. Moseley v. Smith, 21 T., 441; Campbell & Jones v. State Central Bank, 1 App. C., sec.

nah filed his petition, praying that the said judgment be enjoined, alleging the same to have been unjust, illegal and oppressive, for this, that the consideration for which said note was executed was insufficient, fraudulent, illegal and void. He further alleged, that at the trial at law he was prevented from attending court by the severe indisposition of himself and family; that about the time of the court his son-in-law died, so that his presence was imperatively required at home; that he had confided his defense to one Edward L. Homes, Esq., an attorney at law, who died before the trial, and that the attorney to whom his business had been committed, from the fact that he had not an opportunity of conferring with Cavenah, did not introduce the necessary testimony to establish his defense. Upon this petition, his honor, Wm. J. Jones, judge, etc., issued his order for a writ of injunction. Somervill, having been brought into court, demurred to the bill of Cavenah, on the ground that he, the said Cavenah, had appeared by counsel in the suit at law, and by his said counsel had pleaded the general issue, and that the matters and things set forth in his bill were properly cognizable before that tribunal, praying judgment, etc. The demurrer was overruled. Somervill then answered over, denying his knowledge of the consideration given for said note to Secrest, alleging that he had got it in the fair course of trade for a valuable consideration; denying all fraud or collusion in the transaction on his own part, or knowledge of it on the part of others. Upon this issue the cause was submitted to the jury; and the evidence proved that the note sued on had been made for the purpose and was staked on the event of a horse race, which was run between the horses of Secrest and Cavenah, and fairly won by Secrest. A verdict was returned for the plaintiff. We do not deem it necessary to recite any further portion of the testimony or proceeding in this case, saving so much of the charge of the presiding judge as was applicable to such points in the case as we feel it incumbent on us to decide. The court charged the jury that if they believed the note was based upon a gaming transaction, they should find for the plaintiff. The court charged further that at the civil law, horse racing was a species of gambling. The points in this case, presented for the action of this court are these:

1. Did the court below err in refusing to sustain the demurrer to the bill for injunction?

2. Could not Somervill, a bona fide holder, recover on the note?

Without expressly answering the first question, this court will intimate the opinion that it will at all times view with the strictest scrutiny applications for relief on the chancery side of our courts, against judg-

---

160. When citation is by publication, judgment by default does not dispense with proof of material facts. Doty v. Moore, 16 T., 591.

² Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Huff v. Folger, Dal., 530; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T.,

ments at law rendered, as was the judgment in this case, after issue joined. Hard cases should not subvert established precedents. The sickness and other misadventures, as set forth in the petition of Cavenah, certainly would have afforded him ground for relief in equity, if it had appeared from the record that he was wholly unrepresented when his case was called for trial. But this was not the case; for his petition admits and the record shows that his attorney pleaded the general issue, and that under this issue the cause was submitted to the jury, and a verdict returned for Somervill, the then plaintiff. It would certainly be a violent presumption to suppose that Cavenah would have employed an attorney and left him in total ignorance of the nature of his defense. We will not say that the court erred in charging the jury that horse racing was such a species of gaming under the civil law as would preclude a recovery on a contract founded thereon. In this case the necessity does not exist for the exercise of that sort of judicial legislation which has been assumed by the courts both in England and many of the United States, by which they undertake to declare what is and what is not contrary to public policy.

Somervill answers, that he is a bona fide holder of the note; and no proof has been introduced to show that there was a scienter on his part, of the nature of the consideration for which the note was given, or the time at which he became the owner. Horse racing not having been declared by the civil law illegal, nor inhibited by statute, the innocent holder is entitled to recover. Chitty on Bills, p. 52. A motion for a continuance before trial, or for a new trial after verdict, would, we have but little doubt, have been sustained by the court who granted the injunction. These were the legitimate resorts of the party; having failed to make use of them, this court is not prepared to say that the plaintiff made such a showing as justified the court below in sustaining the bill for injunction. Illegality of consideration, unless it has been so expressly declared by the Legislature, will be no defense in an action at the suit of a bona fide holder without notice of the illegality, unless he obtained the bill after it became due. Chitty on Bills, 82.

The judgment of the court below is reversed, the injunction dissolved, and a procedendo awarded to the District Court of Matagorda County.

*Reversed.*

Judge Baylor says: "I concur in this opinion so far as the illegality of the injunction is concerned, but give no opinion on the other points involved in the case."

54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Appollos v. Standiforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thompson, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in dif-

## No. XXIV.

### MAIDEN v. FARIS, BROWN AND CALDER.

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—At the March term of the District Court for the County of Brazoria, in the year 1841, a judgment was obtained by the plaintiff against George Brown and Robert S. Calder by default (the action as to Faris having abated by his death). The suit was for damages for failure to comply with the conditions of a bond given by defendants, which bond was the foundation of the action, and the jury assess the damages at $1000. The record is brought into this court by writ of error and the following assigned as error: "that the judgment was rendered against Brown and Calder, when no sufficient service had been made upon Brown, one of the defendants." By reference to the record, we find the sheriff's return upon the writ and petition in these words: "Served George Brown with a copy of this writ and petition, by leaving the same at his house, on the 26th of February, 1839; service accepted by Calder." By reference to volume 1, Statutes of Texas, p. 201, we find that personal service of all process was required to be made on the defendant; and not until the 5th of February, 1840 (4th volume, p. 88), was that law modified or changed. We find that this writ and petition were issued and served previous to the passage of the last law. The defendants neither appeared nor answered, and the judgment went by default.

The defect is fatal, and the cause must be remanded for a new trial.

*Remanded.*

## No. XXV.

### MONROE EDWARDS v. THE REPUBLIC OF TEXAS.

**(See Note 57.)**

*Appeal from Brazoria County.*

OCHILTREE, JUSTICE.—Monroe Edwards, the plaintiff in error, was brought by writ of habeas corpus before the Hon. James W. Robinson, district judge, etc., on the 7th day of May, 1839, and after the hearing of testimony was recognized in the sum of $10,000, conditioned that he should make his appearance before the honorable the District Court for the County of Brazoria, at a court which was held at Brazoria on ———, to answer a charge of forgery. At the fall term, 1839, of the District Court of Brazoria, Edwards having failed to appear, a

---

ferent States, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State,

forfeiture of his recognizance was taken and a judgment nisi was entered against him; which judgment, without the issuance of scire facias, was made final at the next succeeding term of the court. On the 29th of November, 1842, Edwards, by his attorneys, Harris and Pease, addressed a petition to the Hon. R. E. B. Baylor, judge of the Third District, praying that writs of error and supersedeas might be granted, and that the record of the above stated case might be sent up to the Supreme Court for its adjudication. The prayer of the petitioners was granted.

Without entering upon the consideration of the various errors assigned in this case, we are of opinion that there is a preliminary question which will dispose of it. Should the writ of error have been granted on the petition of the *attorneys* of Edwards?

To fly from the laws and justice of his country has been wisely held to be one of the most heinous offenses of which man can be guilty; and while he continues contumaciously to evade those laws by force, or absence, he is certainly not entitled to any very particular protection. Were a practice like the present to obtain, the administration of justice in criminal cases would soon be little better than a farce. An offender against the laws, who had been so fortunate as to obtain bail, would certainly in every instance try the strength of his recognizance before he would submit his person to the ordeal of justice. If the judgment of forfeiture should be reversed, his securities would be saved harmless, while he himself would escape, "unwhipped of justice," to perpetrate his villainies upon the unfortunate community which had afforded him shelter. The remedy provided by the common law is commensurate with the offense, and though we have eschewed the process of outlawry as being incompatible with the genius of our institutions, yet we think that from the analogy which exists between the cases, we are fully authorized to retain the requisition of the common law, as applicable strictly to applications for writs of error in cases of outlawry, and to pronounce it as the judgment of this court, that in order to obtain a writ of error it is necessary in all criminal cases, on the trial of which his personal appearance is required by law, that the applicant should render himself into custody and come in person to the proper authority to pray it to be allowed him. 1 Chitty Crim. Law, 369.

Writ of error dismissed at the cost of the petitioners.

*Dismissed.*

---

contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermitt, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

## No. XXVI.

EDWARD C. BEAZELY v. SAMUEL STINSON AND THOS. H. WOLF.

*Appeal from Harrison County.*

HEMPHILL, CHIEF JUSTICE.—This cause comes before this court upon an appeal from the District Court of Harrison County. The record shows that it was an action brought by the plaintiff for the recovery of the books, papers, etc., belonging to the office of the clerk of the County Court of Harrison. The plaintiff, Beazely, and the defendant, Wolf, both claim to be clerk; and the defendant pleaded that Pulaski and not Marshall was the legal seat of justice of Harrison County. The judge below overruled the plea as to the seat of justice of the county, and decided that Thomas H. Wolf was legally the clerk of the county court; and from this decision the plaintiff appealed. From the statement of facts which comes up, it appears that one C. K. Andrews was the clerk of the County Court of Harrison County previous to the division of that county into Harrison and the judicial county of Panola by an act of Congress. After such division Andrews became a candidate for and was elected clerk of the County Court of Panola, and Thomas H. Wolf was duly elected clerk of Harrison and entered upon the discharge of his duties; and Pulaski was selected as the seat of justice for Harrison County. Subsequently to these proceedings, the Supreme Court decided that the acts creating judicial counties were unconstitutional. Andrews then resigned his office of clerk of the County Court of Harrison County. The chief justice of Harrison County subsequently issued writs of election for clerk of the county court, when Beazely, having received the highest number of votes, claimed to have been legally elected clerk, gave bonds, etc. After the decision of the Supreme Court before alluded to, the chief justice of Harrison County issued writs of election, under the general law for the removal of county seats (see Acts of Congress, adjourned session of 1838, p. 1), when the town of Marshall received a majority of votes. It also appears from the statement of facts that Marshall is within five miles of the center of the county of Harrison. This court is of the opinion, under all the circumstances, that Andrews having accepted the office of clerk of the County Court of Panola County, an office which was incompatible with the discharge of the duties of his former office of Clerk of Harrison, he thereby vacated the same; and that the election of Wolf was legal, and that he, being the clerk of Harrison County, and in the discharge

---

**Note 43.**—Manlove v. Kinney, p. 493.

Notice of appeal is essential to appellate jurisdiction, and can not be waived. Lockhart v. Lockhart, 1 T., 200; Burr v. Lewis, 6 T., 76; Bennett v. Spillers, 7 T., 600; Hughes v. State, 33 T., 683; Thomas v. Childs, 36 T., 148; Loften v. Nalley, 28 T., 127; Holek v. Varona, 63 T., 65; Smithwick v. Kelly, 79 T., 564; Nickerson v. Nickerson, 65 T., 281; Western Union Telegraph Co. v. O'Keefe, 87 T., 423.

of his duties as such, and there being no vacancy, the election of Beazely was not authorized by law and could not confer the office upon him. The election for the county seat having been held according to law, and the place selected being within five miles of the center, was in compliance with the statute. We are therefore of opinion that the town of Marshall is the legal county seat for Harrison County. The judgment of the court below must therefore be affirmed.

*Affirmed.*

## No. XXVII.

### McILHANEY v. SECREST.

*Appeal from Fort Bend County.*

MORRIS, JUSTICE.—Secrest filed his petition in the District Court of Fort Bend County to enforce the execution of a deed from said McIlhaney to a certain tract of land, the equitable title to which the said Secrest alleged to be in himself. He stated at the close of his petition that defendant was a transient individual; that he was unacquainted with his place of residence, whether in the Republic or not; that ordinary citation might not be able to reach him; he therefore prayed publication of his petition, citing the party defendant to appear, etc. This prayer was granted by the court and publication ordered to be made for sixty days in some public gazette. At the term next succeeding the issuance of this order, a decree was entered in favor of plaintiff. A writ of error has been prayed for and granted to the defendant, and the record is sent up for the revision of this court. The error assigned is, that there was no sufficient or legal notice given to the defendant previous to the rendition of the decree—said judgment or decree having gone by default. By referring to the record we find that no copy of the writ or petition has been issued or served on the defendant. The only notification ever given or attempted to be given by the plaintiff of the pendency of his action was by the publication ordered by the judge to be made in accordance with his prayer. Our statute law nowhere authorizes or legalizes the service of process of any kind than personal service, with the single exception of cases of attachment, where in special cases mentioned it is required to give notice of the pendency of the attachment suit in some public gazette, etc. Texas Laws, vol. 5, p. 187. The first law with regard to the service of process, necessary to notify a party of the pendency of any action, confined it to the person. Texas Laws, vol. 1, p. 201. This was subsequently amended so far as to make serv-

---

**Note 44.**—McGill and Wife v. Delaplain, Administrator, etc., p. 493.

Court can not compel party to take nonsuit. Guest v. Guest, Dal., 394; Thomas v. Hill, 3 T., 270; Sandoval v. Rosser, 86 T., 682, 686.

ice sufficient, where a copy was left at the residence of an individual (Texas Laws, vol. 4, p. 88) ; which amendment has been since repealed, and the law now stands as it *aforetime was*.   No authority is given then in our statute law to notify a party defendant of the pendency of an action against him, *in ordinary cases,* by publication.   The case under consideration does not come under the provisions of the attachment law, and certainly the averment in his petition, which is not positive, and which does not show that it was impracticable to pursue the ordinary requisites of the law, ought not and did not authorize the court to permit a resort to a method of notification not provided for by our law and exceedingly questionable in any instance.   The judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXVIII.

### SAMUEL WHITING V. THOMAS R. MARSTON.

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Marston sued Whiting in the District Court of Harris County at the spring term, 1840, in an action of debt. Whiting filed his plea in abatement on oath to the jurisdiction of the court, averring that he was, at the time of the commencement of the suit and at the trial thereof, not a citizen of Harris County, but a citizen of Travis County.   The parties joined issue on the plea, waived a jury, and submitted the case to the presiding judge upon the evidence offered.   On an examination of the testimony, we do not feel inclined to disturb the judgment of the court below.   Let it be affirmed with damages for delay, etc.

*Affirmed.*

## No. XXIX.

### MICHAEL DE YOUNG V. JOHN T. PATTERSON.

*Appeal from San Augustine.*

JACK, JUSTICE.—This case is submitted upon a motion to dismiss the appeal for the want of jurisdiction.   Patterson sued De Young before a magistrate and obtained a judgment for about $75.   De Young appealed to the District Court for San Augustine County.   The appeal was dismissed from that court, and an appeal from that decision was taken to this court.   The statute regulating appeals from justice courts prescribes that the decision of the case in the district court shall be

---

**Note 45.**—Allcorn, Administrator, etc., v. Sweeny, p. 494.
    Court has no power to enter an involuntary nonsuit.   Guest v. Guest, Dal., 394; Sandoval v. Rosser, 86 T., 682, 685.   Appeal does not lie from judg-

final.   We are of opinion that under this law no appeal lies from the district court upon causes brought before magistrates and appealed into the district courts.   The motion must be sustained and the appeal dismissed.

*Dismissed.*

Judge Baylor says:  "In this case I give no opinion."

## No. XXX.

### WHITING v. BRISCOE AND HARRIS.

(See Note 58.)

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Briscoe and Harris sued Whiting in the District Court of Harris County, in an action of debt, returnable to the fall term, 1839.   Whiting pleaded in abatement that he was at the time of suing out the plaintiff's writ a citizen of Bastrop County and not a citizen of the county of Harrisburg, and prayed judgment of the court, that they would not take cognizance, etc.   The plaintiffs took issue upon the plea and a jury were impaneled to try the issue.   The jury returned the following verdict:   "We, the jury, find that Samuel Whiting was a resident of the county of Harris on the 14th October, 1839"— which was the date of the writ or citation in this case.   The defendant, Whiting, then pleaded the general issue and submitted the case to the jury, who found a verdict for the plaintiffs and a judgment was rendered accordingly.   Whiting appealed.

There were several exceptions taken in the course of the trial below; but inasmuch as they were not of sufficient importance to attract the further attention of the distinguished counsel whose argument has been submitted to us in this case, we will confine our attention to the point which has been brought before us.   It is contended by the counsel for the appellant that the finding of the jury did not answer the issue presented by the plea; that although Whiting may have resided in Harrisburg County on the 14th October, 1839, the date of the issuance of the original writ, that there was an alias writ, issued on the 21st April, 1840, upon which he was served and brought into court to answer at the time when he resided in another county; and inasmuch as the statute requires that in all cases not herein excepted the citizen should be sued in the county in which he resides, that it is the place of residence, at the time of the service of the writ, which determines the jurisdiction of the court over his person.   This court is of a different opinion.   The party instituting the suit ascertained the residence of Whiting, and

---

ment of nonsuit by a justice of the peace on ground that plaintiff failed to appear.   Morgan v. Johnson, 4 T., 117.

commenced their suit in accordance with law.   If Whiting afterwards, for the purpose of evading the jurisdiction, should have left the county in which the suit was instituted, it certainly could not be expected that the plaintiff should be reduced to the necessity of dismissing his suit, for the purpose of instituting another, when a like occurrence might happen.   The residence of the party at the time of the institution of the suit determined the jurisdiction, and in this we unanimously concur. Let the judgment of the court below be in all things affirmed with damages, etc.

*Affirmed.*

## No. XXXI.

### WALKER AND WALKER v. McNEILS AND CALDER

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—D. R. and E. B. Walker filed their petition, addressed to the equity side of the court, against L. H. and J. G. McNeil and R. M. Calder, alleging, that without consideration and by unlawful duress, they were coerced into the conveyance of certain lands and slaves to the defendants, as trustees for the use and benefit of Caroline E. Walker, wife of E. B. Walker, and her infant child E. B. Walker, and such other child or children as the said E. B. Walker and his wife Caroline B. Walker might have during their coverture, and praying that the said deed of conveyance should be delivered up to be canceled and forever declared null and void.   The defendants admit the execution of the deed, but deny any knowledge on their part, at the time the deed was executed, that the plaintiffs were impelled thereto by fear of bodily injury, or by threats, violence, or duress of any kind.   Upon the trial of the cause the judge directed two issues to be ascertained by the jury: 1.   As to the duress.   2.   Whether such blood relationship existed between the parties plaintiffs and Mrs. Walker and child as to support the trust.

The verdict returned by the jury upon these issues was, first, that there was no duress at the time of signing the deed; second, that the blood relationship between the Walkers and Mrs. Walker and child was sufficient to support the trust.   Whereupon the petition of the plaintiffs was dismissed by the court and a judgment rendered against them for costs, from which judgment an appeal was taken to this court.

Before entering into the discussion of the material points involved

---

**Note 46.**—Wescott v. Menard & Co., p. 503.
¹ Withdrawal of answer is a waiver of defects and confession of cause of action.   Winfried v. Yates, Dal., 363; Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Prewitt v. Perry, 6 T., 260; Grier v. Powell, 14 T., 320; Story v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Goodlett v. Stamps, 29 T., 121; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129. Withdrawal of answer after demurrer is overruled does not amount to a confession.   Frazier v. Todd, 4 T., 461; Janson v. Bank, 48 T., 599.   The judg-

in this cause, it will be necessary to dispose of a preliminary question with regard to a mass of evidence which is embraced in the record, but objected to by counsel as not coming up in such manner and form as to entitle it to the consideration of this court. The testimony appearing in the record and objected to as being improperly contained therein, has appended to it an affidavit made in open court by one Peter McGreal, who states that he was appointed by the court below to take down the testimony in the investigation of the cause; that he believes it to be correctly taken down, and that it was read to the witnesses, who assented thereto. This affidavit is attested by the clerk. By reference to our statute law (volume 4, page 92) we find that where an appeal is taken from the district to the Supreme Court, the facts must be agreed upon by the adverse parties or their attorneys, or certified by the judge, before the rising of the court. It does not appear on the record of this cause that the testimony before alluded to has either been agreed upon by the parties, nor has it the certificate of the judge. It would be a loose and dangerous practice, even in the absence of our statute on the subject, to permit evidence to come before us which might materially affect the rights of parties litigant, upon the mere affidavit of any individual as to his appointment by the court to take down the testimony, and the correctness of that testimony, when it nowhere appears on the record that he was so appointed; but under the law there can be no doubt that we must decide from a consideration of the entire mass of evidence thus introduced.

As the determination of this court will be based on the exceptions taken by counsel below to the charge of the judge to the jury and his refusal to give other charges asked by the counsel, and the rejection of testimony offered by plaintiffs below, it is proper that the material portions of the judge's charge should be set forth, in order to determine whether such error in law exists as will entitle the plaintiffs to a reversal of the judgment. The court below refused to permit a witness to be asked whether or not he knew the plaintiffs to have been beaten, the day previous to the execution of the deed, until they *agreed to sign the same;* and also excluded testimony as to threats made by one Westall against the plaintiffs, to which opinions of the court the plaintiffs excepted. The judge then charged the jury, after some preliminary observations, as follows:

"The jury will reject *all* testimony, circumstantial, inferential, or otherwise, which does not relate to the substance, the time, and *manner* of signing and executing the deed; therefore a voluntary transfer of property for the benefit of the relations of the parties can not be affected

---

ment must conform strictly with the cause of action alleged in the pleadings. Storey v. Nichols, 22 T., 87; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Wheeler v. Roberts, 2 App. C., sec. 129. Judgment nihil dicit partakes of nature of judgment by default and by confession, and is construed liberally in plaintiff's favor. Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Wheeler v. Pope, 5 T., 262; Storey v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Graves v. Cameron, 77 T., 273; **Wheeler v. Roberts, 2 App. C., sec. 129.**

by idle rumors or threats, which may have resulted from the supposed misconduct of the parties executing the trust; and which were not held up before them at the *moment* of acting, or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence from the terror of personal violence. If the plaintiffs, having been guilty of any misconduct which was calculated to call down upon them public resentment or indignation, voluntarily sought the method of a conveyance in trust for the benefit of the injured party, intending thereby to appease popular clamor, that act can not be set up in a court of justice to annul their own deed. The violence must be of such a threatening and instantaneous character as to make fear the moving, operating consideration to the deed. If the threats were made by those not present to execute them, it was easy for the persons threatened to apply to the civil authorities for protection; and it could not therefore be such a duress as would avoid the deed. It will be for the jury to determine from the facts of the case, whether these *impending circumstances* existed, taken in connection with the law. Duress is of two kinds—duress of imprisonment, where the person is confined; and duress of threats, where the act of violence is *declared,* or hanging over the party. Duress by threats is rather the fear of loss of life or limb. This fear must be well grounded; not mere conjecture or suspicion of danger, such as a timid mind might conjure up in a moment of alarm. The fear of losing one's property is no duress, because the injury may be repaired by damages; but no adequate atonement can be made for the loss of life, or limb, or liberty, or ignominious punishment." The charge asked by the plaintiffs' counsel, and refused by the judge, was, that when a party is subjected to undue influence of extreme terror or threats, or apprehensions short of duress, and executes a deed under such circumstances, it is void; also, that a deed made under circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, is void. Upon exception to the refusal to give this charge, the charge as given, and the rejection of the testimony offered, we are to determine whether the judgment should be affirmed or reversed. By referring to the charge of the judge, both in part and in whole, we find that the jury were required to confine their examination and base their determination upon facts which would prove duress at the *very time and place* of executing the deed; expressly charged to exclude all testimony, *inferential, circumstantial, or otherwise,* which did not relate to *the time, the manner, and the substance* of signing and executing the deed. This is stated in the very outset of the opinion of the judge. Immediately

---

[2] If the writ or citation is defective and the defect is discovered before defendant answers, a new writ may be awarded. If defendant answers, he waives objections to process. Raquet v. Nixon, Dal., 386; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v. Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Railway Co., 76 T., 100.

afterwards he states, "that no idle rumors of threats, which were no,
held up before the parties at the *moment of acting,* or whilst the neces-
sary preparations were making to carry out the objects of the convey-
ance, with a view to compel their acquiescence, should be regarded by
the jury." In fact, throughout the whole charge the same expressions,
variously modified, but all tending to the same end as stated above, are
repeated and enforced by the court. By an examination of the law
guarding the decisions of courts on questions of this kind, we find that
relief is afforded by the courts in a much more extensive class of cases
than that embraced under the common law definition of duress, as given
by the judge in his charge to the jury.

In 1 Story on Equity, page 243, the very words embraced in the
charge asked by the plaintiffs' counsel and rejected in the court below
are found; and the authorities there referred to fully sustain the doc-
trine. Nowhere do we find that the threats of violence, which are the
inducement to a particular act, must be made at the very *time and place*
of the execution of that act. The fear must exist at the time of the
execution of a deed, but the threats and circumstances inducing that
execution need not be present, but may be proved at any antecedent
time; and it is for the jury to say, when those threats and circumstances
are proven, whether they are sufficient to induce such fear as might
move a man of ordinary firmness to the execution of the deed. But
when we take in connection with the charge of the judge, confining and
restricting the investigation of the jury, both by limited terms of the
law and to a still more limited application of the facts, the refusal on
the part of the court to admit the testimony shown to have been offered
in the trial below, which testimony was at once legitimate and must, if
answered in the affirmative, have had a direct and powerful influence
on the minds of the jury, there can remain but little doubt that manifest
injustice would be done by sustaining the judgment rendered below.
The charge alone might not have been sufficient to reverse; but coupled
with the rejection of testimony which was directly to the issue, a due
regard for the rights of parties and for the laws, which must govern
our decisions, requires a reversal of the judgment. From the meager
statement of facts found in the record we can not proceed here to give
such a judgment as should have been rendered in the court below. The
cause will therefore be remanded for a new trial, and all the costs of
the case will await the final decision of the cause.

*Remanded.*

[3] Errors not objected to in trial court can not be raised on appeal. Ed-
wards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy,
Dal., 376; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58;
Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v.
Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swen-
son v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T.,
109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v.
Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T.
Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; Andrews
v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544;
Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v.

## No. XXXII.

### DANIEL McKINNEY v. PETERS AND LEWIS.

(See Note 59.)

*Appeal from Bowie.*

OCHILTREE, JUSTICE.—Daniel McKinney filed his petition in the District Court of Bowie County, in which he alleges that on the 17th day of June, 1840, John S. Peters and Charles Lewis, the latter by the name and description of Chas. Lewis, for value received, acknowledged themselves indebted to your petitioner in the sum of $296.31, and in consideration thereof executed at the same time their promissory note, whereby they jointly promised to pay your petitioner said sum one day after date thereof aforesaid; yet though often requested, etc. We presume that the order of pleadings in the case is not correctly stated in the transcript sent up, as the record represents the defendant as pleading first the general issue and then demurring to the petition. The demurrer was overruled and a jury impaneled, when a note described as follows was attempted to be offered by the plaintiff in evidence.

"$296.31-100. One day after date, we promise to pay Daniel McKinney, guardian of the heirs of William Collum, deceased, two hundred ninety-six 31-100 dollars, value received of him this 17th June, 1840. (Signed) John S. Peters, Exr. of Samuel Peters, deceased. Charles Lewis."

Which note the court refused to permit to go to the jury, to which opinion of the court the plaintiff excepted. The verdict of the jury was for the defendant; judgment accordingly. Why the court below refused to let the note go to the jury we are not informed by anything contained in the statement of facts. From the arguments and briefs of counsel submitted, we are led to the conclusion that the court below are of opinion that there was a variance between the note described in the petition of the plaintiff and that offered as evidence. If it was because the petition did not set out the description of Peters, one of the payees, we are of opinion that he erred. There is no better settled doctrine than that an executor or administrator can not contract a debt to bind his intestate's estate. This being admitted, the fact that he thought proper to add, as an appendage to his name, executor of Samuel Peters, deceased, imposed no obligation on the plaintiff so to describe

Ray, 50 T., 511; Urquhart v. Womack, 53 T., 516; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

him in his petition. It might have been because the descriptio personae of the payee was omitted in the petition. We do not believe that it was necessary that the petitioner should have averred it, to enable him to offer a note which corresponded in all other material requisites with the indebtedness set forth. On a note made payable to an administrator, he may sue in his own name. Bayley on Bills, 335. So on a note payable to anyone in a fiduciary character, the payee need not sue in that character, but may maintain an action in his own name. We are of opinion, therefore, from all that we can glean from the record, that the court below erred in refusing to allow the note to be offered as evidence. It is therefore ordered, adjudged and decreed by the Supreme Court of the Republic of Texas, that the judgment of the court below be reversed, and that the plaintiff Daniel McKinney do recover of the defendants, John S. Peters and Charles Lewis, the sum of $296.31, principal, and $71 interest, together with all his cost in this behalf expended, together with 10 per cent damages for delay, and that execution issue therefor.

*Reversed and rendered.*


Concurred in by Chief Justice John Hemphill and Judge R. E. B. Baylor.

Judge P. C. Jack says: "I am compelled to dissent from the above opinion. I do not think the note offered in evidence was described in the petition. The judgment in this case, it seems to me, would be no bar to an action brought on the same note, by the plaintiff as guardian."


## No. XXXIII.

### JOHN DURST v. JOSEPH F. LEWIS.

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—In this case the appellant, or plaintiff in error, was trustee for both parties to the record, and had no such interest in the matter in controversy as would authorize him to represent the rights of one in opposition to the claims of the other party. The parties are not properly before the court, and no case is presented for the exercise of appellate jurisdiction. Under such circumstances it would be superfluous to examine into the errors assigned by the plaintiff, as it would not be competent for this tribunal to afford relief against them, if any there might be. It is therefore ordered by the court here, that the writ of error be quashed and the case dismissed.

*Dismissed.*

Note 47.—Bradley v. McCrabb, p. 504.

[1] Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

## No. XXXIV.

### SAMUEL SHARPE v. THE REPUBLIC OF TEXAS.

*Appeal from Jackson County.*

OCHILTREE, JUSTICE.—Samuel Sharpe, having proved before the board of land commissioners of Jackson County that he was a resident citizen at the date of the declaration of independence, a single man, and had actually engaged in the service of his country pending the revolution, having been present at the taking of San Antonio and at the battle of San Jacinto, was allowed a certificate for one-third of a league of land. Subsequently and within the time prescribed by law he married, and thereby became entitled to an augmentation of two-thirds of a league and one labor of land. The woman whom he had married had arrived in this Republic after the 1st day of January, 1837, and was the head of a family; and in her own right, anterior to her marriage with Sharpe, received a certificate under the twenty-fourth section of the land law for 1280 acres of land. When Sharpe after his marriage applied to the board for his augmentation, they insisted on deducting from the two-thirds of a league and labor to which he was entitled, the quantity of land for which his wife had, previously to marriage, received her certificate. From this decision the plaintiff appealed to the district court, where, strange to say, the judgment of the commissioners was not only reversed, but Sharpe was decreed to recover nothing by his suit. From this judgment the plaintiff took an appeal to this court. In this state of case, it becomes our duty to render such judgment as should have been rendered by the court below. The board of commissioners should have issued the plaintiff a certificate for the full quantum of land authorized by the twenty-third section of the land law, passed December 14, 1837, viz., two-thirds of a league and one labor. That section contains the only exceptions to the rule, viz: that its provisions should apply to those only who have contributed to the support and defense of the country; that the additional quantity shall not be allowed to any whose wife has received a league of land from the government. Neither exception applies in this case. The judgment of the court below must be set aside. It is therefore ordered, adjudged and decreed, that the plaintiff, Samuel Sharpe, recover of the Republic of Texas an augmentation of two-thirds of a league and one labor of land, and that the judgment of this court be certified to the District Court of Jackson County, and that the clerk of

---

[2] Quo warranto is a legal proceeding by the State to determine the right of an office or franchise, and to oust or forfeit. As a general rule, it can only be sued out in the name of the State by its prosecuting officer. It is also used to ascertain whether an individual has authority to exercise official functions. Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Grant v. Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress, 53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;

said district court be ordered and directed to issue to said Samuel
Sharpe a certificate, in due form of law, for said amount of land.

*Reversed and rendered.*

## No. XXXV.

### SCOTT AND SOLOMON V. MAYNARD ET UX.

(See Note 60.)

*Appeal from Matagorda County.*

HEMPHILL, CHIEF JUSTICE.—Maynard and wife brought this
action in the court below against Scott and Solomon, to try the title to
a certain lot of land in the town of Matagorda. The answer of the de-
fendants denies the allegations of plaintiffs, and asserts title to them-
selves to the lot in question; filing interrogatories to be answered by
the said Maynard, in relation to the consideration paid by him for
certain improvements on the said lot. A conveyance of the said im-
provements by Scott and Solomon to Maynard is filed as an exhibit in the
case; and Maynard's answers to the interrogatories are, that the con-
sideration consisted of cash advanced, goods sold, work done and liabili-
ties assumed; and that it has not failed. Upon an affidavit of Scott
and Solomon, a change of venue was granted, by the judge in chambers,
to the county of Brazoria; but the cause was never transferred. Trial
being had, judgment was rendered for plaintiffs, and a writ of posses-
sion to the lot in controversy awarded. A motion for a new trial was
made on the following grounds, viz: that the court instructed the jury
that the only question for their inquiry was as to the title to the lot,
and that they were not to inquire into the value of the improvements,
and that no survey of the property was ordered by the court; no de-
mand of possession proven by the plaintiffs; and no notice to quit given
to defendants. The motion was overruled, and an appeal taken. Dur-
ing the progress of the cause there were three several agreements of
the counsel•of both parties in relation to the title of the wife of the said
Maynard to the land in dispute; by the final modification of which it
was admitted that she had become the owner thereof by purchase, after
her marriage with the said William J. Maynard. The petition and an-
swers in a suit in equity, instituted by Scott and Solomon against May-
nard and wife, were offered in evidence. In his answer, the said William
J. Maynard admits that some time in October, 1839, he offered verbally
to sell to the said Scott and Solomon the said lot for the price of $600
in cash; that they, having accepted the proposition, took possession of
the same, promising from day to day the payment of the said money in

Territory v. Lockwood, 3 Wall., 236. An individual may make the relation
on which the State's officer files the information. In such cases the pro-
ceedings are in the exclusive control of the State's officer, and can not be
dismissed by the relator. Banton v. Wilson, 4 T., 400; Mathews v. State,
82 T., 577; McClesky v. State, 4 T. C. A., 322. If relator has no interest, court
(548)

pursuance of their agreement, but had hitherto failed to do so. He admits that the said Scott and Solomon had erected a building on the said lot, but states that they had disposed of the same for a valuable consideration, and that his wife, C. O. Maynard, is now sole owner and proprietor thereof. From some exhibits in the case it appears that this house was conveyed by Scott and Solomon to the said William J. Maynard and by him to one Thomas Stewart, and from the said Thomas Stewart to the wife of the said Maynard. A. C. Horton testifies, that Maynard admitted to him that he had sold the lot of ground to the appellants for $600, to be paid in sixty days. Maynard also stated that Scott and Solomon had made him a deed for the improvements, to secure him as their indorser. The value of the improvements he would estimate at four or five thousand dollars, at the time they were made. John W. McCamly testified that Maynard made similar admissions to him as to the sale of the lot, and that he had received the money. Witness thought that he had received property sufficient to satisfy him.

This cause was heard at the previous session of the Supreme Court. The arguments of counsel were then principally directed to the grounds urged in the motion for a new trial. To these points we will now first advert. The statute under which this action was brought was passed to prevent the complicated and fictitious proceedings of the action of ejectment, as known to the law, simplifying its form and modifying in some degree its action and effects. In the eighth section of that act it is provided, that on a suggestion of a defendant in possession of lands that he and those persons under whom he claims have had adverse possession of the land in controversy for at least one year previous to the commencement of the suit, etc., that the jury shall inquire into the truth of the suggestion, ascertain the value of the improvements, if any have been made, and give such judgment either for or against the defendant as the comparative value of the improvements and the damages sustained by the detention, use and occupation may require at their hands. The third section provides, that a survey shall be ordered by the judge of the land, in chambers or in court, or upon motion of either party, for the better finding out and discovering the truth of the matter in controversy. There was no error in the court below in overruling the points here made. As to the first, no suggestion as required by law was filed; and though the value of the improvements was proven, still no inquiry could be made by the jury, since there was no allegation in the answer under which the proof could be introduced, and any evidence therefore on that point was extrinsic to the issue. The provision with

---

may refuse to allow the information to be filed, or dismiss it. Deaver v. State, 27 T. C. A., 453. Can not be used as a remedy by a stockholder of a corporation. State v. R. G. Ry. Co., 41 T., 217. Quo warranto is a proper proceeding to try title to an office, but it has always been regarded by our courts as only a cumulative remedy. Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. Cocke, 54 T., 482; Flatan v. State, 56 T., 93; Watts v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348; Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State, 70 T., 393; State v. De Gress, 72 T., 242; Hunnicutt v. State, 75 T., 233. The term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol.

regard to the survey is merely directory where there is doubt, though a matter of right when required on motion; and since no motion was made for the survey, and no difficulty arose as to the proper designation and identification of the land, the petition and answer concur in their descriptions of the lot in dispute. There being, then, no necessity for the survey, there was no error in proceeding to trial without an order for the same. Equally unsound are the other reasons alleged in the motion. Demand of possession and notice to quit are necessary when the parties occupy the relative position of landlord and tenant. But the defendants claim the lot in controversy as their absolute property. The important questions which still present themselves, from an inspection of the record, are in relation to the interest or estate which the wife has to the land in contest; the husband's power of disposing or selling of the same; and whether the sale, being made verbally, was valid and binding in law.

The alleged sale of the lot in question from Maynard to Scott and Solomon, having been made in 1839, before the introduction of the common law, the rights of the parties are regulated and must be determined by the system of laws prevailing in this Republic at the period of the transaction. As tested, then, by these laws, did the purchase by Mrs. Maynard of this property after her marriage vest in her any estate or interest separate and apart from that of her husband; or did it immediately become a portion of the community of "acquits," or gains? By reference to White's Recopilacion, we find that ganancial property is all that which is increased or multiplied during marriage; by multiplied, being understood all that which is increased by onerous cause, or title; and not by a heratine one, as inheritance or donation; that property is supposed to be common, except when proved to be separate or distinct; that what the husband or wife bring into marriage as their own peculiar property, or acquire during it by lucrative cause or title, does not come into partition; but that property acquired during marriage by purchase, sale, or other onerous cause or title, does. 1 White's Recopilacion, p. 61. Having no access to the works of Febrero, we are compelled to glean such extracts from that author, applicable to this subject, as may be found on examining the Reports of Louisiana. In Davenat v. Le Bocton, 1 La., 520, it was decided that by the Spanish laws everything purchased during the marriage fell into the common stock of gains, and at the death of either of the parties was to be divided equally between the survivor and the heirs of the deceased; and this

9, p. 75), Rev. Stats. 1895, art. 4347, regulating quo warranto proceedings, applies only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. Co. v. State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats. 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry. Co., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry. Co., 89 T., 562; also see State v. S. P. Ry. Co., 24 T., 80; State v. R. G. Ry. Co., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by

effect was produced whether the purchases were made with the money or capital of the community, or with that of either of the married parties; whether in the name of both, or that of one of them separately. See Feb. add. part 2, lib. chap. 4, sec. 1, No. 6. In the Novissima Recopilacion (lib. 10, title 4, sec. 1), we find a law expressed in the following terms: "'Toda cosa que el marido y muger ganaren a compraon estando de consuno hay aulo ambos por medio," etc. [Everything which the husband or wife shall acquire or purchase while together shall be equally divided between them, etc.] From an examination of the above authorities, we are justified in concluding that under the Spanish laws property acquired during marriage by purchase, whether the acquisition be made in the joint names of husband and wife or of either of them separately, must be considered as common property, and that if there be any exception to this general rule, it must be established by certain and positive evidence, or otherwise the presumption that the property is common will remain in all' its force unimpaired. It appearing, then, by the testimony that Mrs. Maynard acquired the lot in dispute by purchase after marriage, the same was thrown into the common stock of gains, and by operation of law was impressed with all the incidents appertaining to ganancial property.

We proceed to consider the husband's power of disposing or selling the same. In Sala, lib. 1, title 4, sec. 20, it is clearly laid down that, during the continuance of the marriage the *actual* dominion over the community property is vested in the husband, and that therefore he can sell the common property without the consent of the wife; and that such disposition is valid, except when made for the purpose of defrauding or prejudicing the wife. See also, 1 White's Recop., p. 63, with the notes from Palacios. Maynard, then, having the administration of the ganancial property, and the power of disposing thereof without the consent of his wife, his alienations of the same, when not vitiated by the exception above mentioned, would be valid and binding in law. The question next in order is as to the validity of a verbal sale under the laws of Spain. In the 5th Partida, title 5, Law 6, it is said that sale and purchase may be affected in two ways, etc. "One of the modes is without writing; when the seller and buyer have mutually agreed upon the price; the one being pleased with the price and the other the thing, without mentioning any writing. We say that a sale thus made would be perfect, although no earnest had been given by the buyer to the seller; as they would be both bound for the fulfillment of the contract they had made." In Gonzales v. Sanches and Wife, 10 N. S., 67, and in Ducrest's Heirs v. Bijeau's Estate, it was decided that, by the Spanish

---

law—may be filed by district attorney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the

laws, parol evidence was admissible to establish the alienation or acquisition of immovable property; and in Sackett v. Hooper, 3 La., 104, the same doctrine was expressed in substance, though in the latter case, possession on the part of the vendee was maintained as a necessary incident to the validity of the sale. From an examination of the above law and authorities, we are of opinion that a verbal sale of lands, accompanied by possession on the part of the vendee, was valid under the laws in force at the time of making the contract (in this Republic). From the record, we think there was sufficient evidence that a verbal sale was made by the said Maynard to the appellants. His answer to the suit in equity partially admits the fact, and also of possession taken by the vendees. Two witnesses testify to his admissions of having sold the lot for $600; one of them says, to be paid in sixty days; and the other, that Maynard admitted the receipt of the money. The fact of the sale (which was valid in law) being thus established by evidence, the finding of the jury in favor of the plaintiffs in the court below was clearly erroneous. Before awarding final judgment, the court will take occasion to express its sense of the important assistance afforded them by the able and zealous efforts of the gentlemen of the bar, when their investigations are directed to the system of laws by which the matters in controversy must be decided. But when their arguments are based on some other system, which, however admirable for its justice or exalted for its wisdom, can exercise no other authority than that derived from the force of reason, their labors serve to perplex and confound, rather than remove the embarrassments which shroud the important principles involved in the controversy. The court appreciate the difficulty arising from the scarcity of books or authorities on questions arising under the former laws of the country. But it is clearly the duty of the attorneys to exhaust all which may be accessible to them before they turn for assistance to the common or any other system of law. Throughout the progress of this cause in the court below, as well as before this tribunal, there has been a strange compound of error, and a mixture of the different systems of jurisprudence, springing originally from the belief that the lot sold was the separate property of the wife. The errors which appear in the charge of the court below originate from this mistake; and from the conduct of the argument in this court, it is manifest that the principles of law which governed the case were not discussed before the district court; and from this circumstance the judge was misled to charge on principles of law which were not applicable to the case. Having maturely considered the matters presented on the record for our decision,

office, to question right of officer to do an act or restrain him from exercising a privilege incident to his office. State v. Smith, 55 T., 447. Nor to oust an officer for bribery until conviction. State v. Humphries, 74 T., 466. Nor to revise decision of city council as to eligibility of candidate for municipal office. Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264. Nor by public weigher against a private weigher. Watts v. State, 61 T., 184. It does not lie to forfeit fronchise, except for causes declared by statute. State v. R. G. Ry. Co., 41 T., 217; Morris & Cummings v. State, 65 T., 53. It lies against the enjoyment of a franchise granted either by State or municipal legislation, when the power to grant did not exist; and the legality of

we are of opinion that the judgment of the court below was erroneous and should be reversed; and it is therefore and hereby ordered, adjudged and decreed, that the judgment of the court below be reversed, and that the appellees pay the costs of suit.

*Reversed.*

## No. XXXVI.

### JOHN W. MOORE, SHERIFF, v. JOHN D. MOORE.

*Appeal from Harris County.*

JACK, JUSTICE.—This case comes up by appeal from Harris County. John D. Moore, who was the plaintiff below, by his counsel, moved against John W. Moore, who was sheriff of Harris County, for failing to return an execution, which the said John D. Moore had against one Pilie. There was judgment for plaintiff on his motion, against the sheriff as principal, and against George Stephens, B. Carraher, A. Larson, Charles Bowman and R. Walker, his securities; and defendants appealed. We can not find in any part of the record in this case that John W. Moore either had notice of the motion against him or of his appearing and contesting it. By an act passed May 24, 1838, a summary remedy is granted against sheriffs in certain cases; provided that three days notice of such motion be given to such sheriff. This is an extraordinary remedy and must be strictly pursued by those who wish to avail themselves of its provisions. In no part of the act are the securities mentioned, and we think it never was intended to mean more than that the sheriff alone and not his securities could be reached by motion.

We think there was error in the court below; first, because it does not appear from the record that the defendant below had the notice which the statute requires; and secondly, even if the securities could be reached by such motion, they were not included in the motion. It was against the sheriff alone; and the judgment was manifestly erroneous, so far as their rights were affected.

Let the judgment of the district court be avoided and reversed, and the cause remanded.

*Reversed and remanded.*

---

the corporation may be called in question by quo warranto in an action involving the right of an officer to do an act under the charter. Morris & Cummings v. State, 62 T., 728; State v. Goowin, 69 T., 55; Furrh v. State, 6 T. C. A., 221. It lies to test validity of a municipal or quasi municipal incorporation. State v. Dunson, 71 T., 65; East Dallas v. State, 73 T., 370; State v. Eidson, 76 T., 302; Ewing v. State, 81 T., 172; Mathews v. State, 82 T., 577; State v. Wofford, 90 T., 514. In such cases laches can not be imputed to the State. State v. Wofford, 90 T., 514; Troutman v. McClesky, 7 T. C. A., 561. It is not a means to compel a person or corporation to carry out contracts. It is used to forfeit, not to suspend a franchise; to reclaim a privilege, not to punish for breach of contract. Morris & Cummings v. Schooner Leona, 67 T., 303. Though quo warranto is in form analogous to a criminal prosecution, the remedy is civil in nature. State v. Degress, 53 T., 387; Davis v. State, 75 T., 420; Buckler v. Turberville, 17 T. C. A., 120; Ames v. Kansas, 111 U. S., 449; Foster v. Kansas, 112 U. S., 201.

## No. XXXVII.

### NANCY WILLIAMS v. GEORGE HUFF.

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—In this case a writ of injunction was ordered to issue, on the plaintiff's bond and security required by law. Some informal proceedings followed and a judgment was finally awarded, ordering defendant to pay the costs of suit; but no bond appears on the record and consequently there is no evidence that any was given as required by law and the order of court. The want of the bond, we think a fatal defect, vitiating all the proceedings subsequent to the order that a writ of injunction should issue. It is therefore ordered, adjudged and decreed that all proceedings, subsequent to the order of the court commanding the writ of injunction to issue be reversed and set aside, and that the cause be remanded to the district court for further action.

*Reversed and remanded.*

## No. XXXVIII.

### JAS. W. AND S. W. SIMMS v. JOHN PRICE.

(See Note 61.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This cause should be reversed and remanded for a new trial, because the verdict of the jury is irresponsive to the evidence. That part of the finding of the jury, based on the only evidence offered, was very properly for the defendant. The jury arrogate to themselves the right, however, to go farther, and to determine the rights of the parties according to their own notions of what had taken place between them. The province of a jury is to determine a case upon the facts as proven, connected with the law as given them in charge by the court. They should never let their own impressions, derived from knowledge of circumstances on their own part, or impressions received from others not introduced as witnesses, sway their minds or enter into their verdict.

*Reversed and remanded.*

Note 48.—Roman v. Moody, p. 512.

Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

Note 49.—Taylor v. Duncan, p. 514.

[1] Appeal will be dismissed if transcript is not sent up within the time prescribed by law unless satisfactory excuse be shown. Lockhart v. Lockhart, 1 T., 199, 201; Hicks v. Harlan, 1 T., 560; State v. Kroner, 2 T., 492; Keese v. Swift, 3 T., 111; Urbane v. Johnson, 3 T., 191; Reynolds v. De-

# JUNE TERM, 1844.

### No. 1.

#### RAYMOND DARLY V. CHAS. CHEVALLIER.

##### (See Note 62.)

*Appeal from San Augustine.*

BAYLOR, JUSTICE.—Two points present themselves for our consideration in this case, which are alleged as grounds of error for a reversal of the judgment below.

1.   That the note sued was payable on the contingency of the return of the payee from San Antonio, and that it was not proven on the trial that he had ever returned.

2.   That it is not alleged and proven that the claim had ever been presented to the appellant, as administrator of the payor.

In regard to the first point it will be sufficient to say that the note bears a credit of $100, which, added to length of time which had elapsed between the making of the note and the commencement of the suit, was sufficient to raise the presumption that the contingency had happened.

The second point is of more consequence. This court has decided, that under out statute it is necessary to allege and prove that the claim had been presented to the administrator and refused by him, and that this court would reverse judgments in the courts below, where such allegation and proof was wanting. See Cummings, Administrator, v. Jones. This case at bar was commenced before the passage of our statute, and although its provisions are similar to those of Louisiana, yet we feel bound to conform to the Louisiana decisions in cases arising before our statute. In Louisiana it is necessary to present claims to an administrator before suing on them; but unless advantage is taken in the court below of such nonpresentation, the appellate tribunal will not notice the defect. In the case at bar no objection was taken in the court below to the want of an allegation of the presentation and refusal of the claim, and this court will not now set aside the judgment for that reason. This decision is not to be understood as overruling the case of Cummings v. Jones, and the decision in that case will be adhered to.

Let the judgment of the court below be affirmed with costs.

*Affirmed.*

chaumes, 22 T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5, 13; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419.   Where right of appeal is lost by lapse of time it can not be revived by statute subsequently passed.   Lockhart v. Lockhart, 1 T., 199, 201; First Nat. Bank v. Preston Nat. Bank, 85 T., 560; First Nat. Bank v. Preston Nat. Bank, 3 T. C. A., 545.

[2] Retrospective laws prohibited by Constitution are such as give rights or impair vested rights, by relation back.   Sutherland v. De Leon, 1 T., 250; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Hamilton v.

## No. II.

### ANDREW BRISCOE v. CORRI AND WIFE ET AL.

*Appeal from Harrisburg County.*

BAYLOR, JUSTICE.—The appellant, Briscoe, commenced his suit in the court below against Henry Corri (who had intermarried with Eliza Hight, widow of William Pope) and one David Y. Portis, for the recovery of a certain negro man slave commonly called Henry; and for the sum of $1000, alleged to be due for the hire of said slave. Briscoe avers in his petition, that on the 20th of March, 1839, he purchased of the said Eliza for the consideration of $800, to her in hand paid, the slave in question; that she warranted him to be sound in body and mind; free from incumbrance as to title, and a slave for life; "to have and to hold the said slave, his profits and labor to him, the said Briscoe, his heirs and assigns forever; on condition, however, for the purposes named in their written contract, to wit, that the said Eliza should keep the possession of the said slave in the city of Houston for one month, and at the expiration of that time she should, on the payment of $100, have the privilege of keeping the said slave one other month; after which time she was to keep the said slave, so long as she wished, on the month's payment in advance of the sum of $200, with the further trust, that on the payment of the said hire, punctually in advance one month, the said Eliza had the privilege of purchasing the said slave for the sum of $900; all of which would fully appear by the bill of sale and the trust therein contained, marked (A), and prayed to be made a part of his petition."

Briscoe further alleged that the said Eliza had not complied with any of the trusts mentioned in said instrument of writing, except the payment of the first and second month's hire; that she had entirely failed to comply with any or either of the other trusts in said writing named, and that she had thereby forfeited and forever lost the privilege of either keeping said slave, or of repurchasing him at the price agreed on between the parties. The petition further alleges that the said Eliza, confederating with others, had the said slave in possession; and that the other defendant, Portis, in some way or other had connected himself with the transaction so as to have the actual control of said slave. The petition concluded with the usual prayer, that defendants be compelled to deliver up said slave to the said Briscoe, and that the defendants' title to the same be vested in him, and that the hire be paid, etc.

Flinn, 21 T., 713; Sherwood v. Fleming, 25 T. Supp., 408; Bender v. Crawford, 33 T., 745; Moore v. Letchford, 35 T., 185; Chalk v. Darden, 47 T., 438; White v. Martin, 66 T., 340; Mellinger v. Houston, 68 T., 37; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Calder v. Bull, 3 Dal., 386; Cummings v. Missouri, 4 Wall., 277; Campbell v. Holt, 115 U. S., 630. Providing a remedy for existing rights, or changing remedy, is not a retrospective law prohibited. Hall v. Allcorn, Dal., 433; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 343; Treasurer v. Wygall, 46 T., 447; Worsham v. Stevens, 66 T., 89; Parker v. Buckner, 67 T., 20; Odom v. Garner, 86 T., 374; Association v. New-

To this petition at the spring term of the district court in the year 1840, the defendants filed the following plea:

"In this case, David Y. Portis, Henry Corri and Eliza Corri by attorney, come and defend the wrong and injury, etc., and for answer say, that the negro boy mentioned in plaintiff's petition was delivered up to him, D. Y. Portis, in part satisfaction of a certain mortgage, which he had and held as attorney, for F. Soissons, of the city of New Orleans, against the said Eliza Corri; and that at the time of the delivery, the said negro was in possession of said Corri; and for further answer denies all and singular the allegations in plaintiff's petition and pleads payment of the debt. D. Y. Portis, for himself; Megginson & Thruston, for H. Corri and E. Corri."

On the trial of the cause in the court below, there was a verdict and judgment in favor of the defendants for the sum of $223.50, and that the title of the slave sued for was in the defendants. From which judgment Briscoe appealed, and seeks to reverse it here on two grounds:

1. The court below erred in considering the bill of sale a mortgage, instead of a conditional sale, with the privilege of repurchase on the part of Eliza Corri.

2. Under the pleadings in this case, it was error to render a judgment against the appellant, if the facts would otherwise justify it; as there was no plea of reconvention or offset.

In considering the first assignment of errors, we find upon looking into the record that the court below considered the bill of sale for the slave a mortgage, and permitted the defendants to show by verbal proof the consideration which Briscoe paid for the slave, and to show also by proof how the mutual account stood between the parties. Without deciding whether the bill of sale in this instance is a mortgage or conditional sale with the privilege to repurchase, we think that the written contract bears strong marks upon its face of hardship and oppression. This circumstance, together with the fact that the slave remained in the possession of the vendor, might perhaps, upon a proper state of the pleadings, have authorized the judge below to have concluded that the bill of sale was a mortgage and not a conditional sale. But it is unnecessary to decide this point, as we consider the second assignment of errors fatal to the cause.

In the second assignment of errors we think the objection is well taken. Under the plea of the defendants the jury were not authorized to find a balance in favor of them, there being no plea of set-off claiming such indebtedness on the part of Briscoe to the defendants. As the

man, 86 T., 380; Fristoe v. Blum, 92 T., 76; Standifer v. Wilson, 93 T., 232; Capps v. Carvey (T. C. A.), U. R. C., 1897; Maynard v. Freeman (T. C. A.), U. R. C., 1900. Statutes are never construed to operate retrospectively unless their plain language requires it. Taylor v. Duncan, Dal., 514; Linn v. Scott, 3 T., 67; Martin v. State, 24 T., 61; Orr v. Rhine, 45 T., 345; Insurance Co. v. Ray, 50 T., 511; Grigsby v. Peak, 57 T., 142; Johnson v. Taylor, 60 T., 360; Mellinger v. Houston, 68 T., 37; Rockwall Co. v. Kaufman Co., 69 T., 172; McGregor v. Goldammer, 2 U. C., 49; Murray v. Gibson, 15 How., 421; Harvey v. Tyler, 2 Wall., 329; Chewheong v. United States, 112 U. S., 536; Shreveport v. Cole, 129 U. S., 36.

